Eugene L. Cribb, Plaintiff in Error, v. Chicago Railways Company et al., operating as Chicago Surface Lines, Defendants in Error.

**Gen. No. 32,895.**

34

Opinion filed February 27, 1929.

A. U. FORMAN, for plaintiff in error.

BROWN, FOX & BLUMBERG, for defendants in error; FRANK L. KRIETE, JOHN E. KEHOE, CHARLES LE ROY BROWN and JAMES L. COLEMAN, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action on the case for personal injuries in which the plaintiff lost his right leg between the knee and the ankle by being run over by a car of defendants. The declaration consisted of two counts, in which it is averred that at the time of the accident the relation of passenger and carrier existed between the parties; that the accident took place on the 15th day of April, 1924, while the plaintiff was as he alleged a passenger on a 75th street car of defendants, and that he was lawfully riding in and upon said street car as a passenger for hire, and that desiring to alight at the intersection of Ellis avenue and 75th street informed the servant of defendants of such intention, and that defendants, by their agents and servants in charge of said car, wholly neglected their duty to stop said car at said street crossing and so carelessly, negligently

and improperly managed and operated the same that the car failed to stop at the street crossing, and failed to give plaintiff, while in the exercise of all due care and caution for his own safety, sufficient time to safely and properly alight therefrom, and that through such negligence on the part of defendants in the operation of said street car plaintiff was thrown to the ground and under the wheels of said car and his right leg was cut off and completely severed from his body, etc., to his damage in the sum of $50,000.

To this declaration defendants pleaded the general issue. There was a trial before court and jury, a verdict finding the defendants not guilty, and a judgment thereon after the court overruled a motion by plaintiff for a new trial, and from that judgment plaintiff prosecutes this writ of error.

It is not controverted but that plaintiff lost his leg by being run over by a street car of the defendants, but it is denied that plaintiff at the time of his injuries was a passenger on a car of defendants. While it is assigned for error that the verdict is not supported by the evidence and is contrary to the law and the evidence, the principal error argued for reversal is the examination of plaintiff regarding certain accident insurance policies and their admission in evidence and arguments thereon before the jury.

We will first dispose of the contention of plaintiff that the verdict against him is not supported by the evidence. There was no eyewitness to the accident, so that plaintiff's testimony regarding the manner in which he lost his leg is unsupported by other direct testimony on his part. Counsel for plaintiff in his brief states that:

"The plaintiff, after accounting for his movements during the evening of April 15, 1924, up to the time of the injury, testified that at about eleven o'clock in the evening of that day and while a passenger on the car

complained of he pressed the button for the car to stop, walked to the front platform, said to the motorman, 'Next stop, please' and when the car stopped or almost stopped and the door opened, descended upon the step to alight. Before completely alighting, however, the motorman applied the power with a sudden jerk, throwing plaintiff from the step, whirling him around facing the opposite direction from that in which the car was moving, hurling him to the ground and his foot went on the track, whereupon the rear trucks of the car passed over and severed the right leg at the ankle.''

Plaintiff further testified that he was taken by the Grand Crossing police patrol wagon to the South Shore Hospital and his leg was amputated at a point ''midway'' between the knee and ankle. He also testified as to his business and that his earnings were about $175 a week, and as to the payment of his surgeon's, nurse's and hospital bills.

This testimony was met by defendants in an explicit denial that plaintiff was a passenger on defendants' street car, or that he was injured while alighting therefrom. The motorman, police officers McNaughton and Quish, Conductor McCann and nine passengers in the car at the time of the occurrence testified as witnesses for defendants. There was an unanimity in the testimony of these witnesses that the car which ran over plaintiff's leg after stopping at Drexel boulevard, two blocks west of the accident, ran at a speed of between 10 and 18 miles an hour along 75th street and across Ellis avenue without making any stop at the west side of Ellis avenue and without any perceptible change in speed, although the witness Horka put the speed at 15 to 10 miles just before reaching Ellis avenue. A cry of distress was heard by defendants' witnesses, upon which the car halted. It was the conductor's opinion that the cry came just as the rear steps of the car passed plaintiff, and that the car was then on

the building line just east of the crosswalk of Ellis avenue; the conductor gave the usual signal for an emergency stop, three bells, and the car came to a stop about 50 feet east of the east line of Ellis avenue; that the motorman on hearing the emergency signal pulled the reverse and stopped the car within 75 or 80 feet, which brought the car to a standstill so that its rear end was between 45 and 50 feet east of Ellis avenue. All of defendants' witnesses testified that the car made no stop for Ellis avenue, and did not decrease its speed until the cry of distress was heard.

The motorman not only denied plaintiff's statements regarding his being a passenger and giving a signal and making a verbal request to stop the car at Ellis avenue, but did state that the car had run uninterruptedly at a speed of from 14 to 16 miles an hour approaching and crossing Ellis avenue; that he made no stop until the emergency bell sounded, and that no one came to the platform or signaled or asked him to stop in order that he might alight at Ellis avenue. In this testimony the motorman was corroborated in every material detail by officers McNaughton and Quish, who were on the front platform of the car with him at the time when plaintiff testified that he signaled the motorman to stop the car at Ellis avenue and attempted to alight, resulting in his falling and being run over and losing his leg. All of defendants' passenger witnesses by their testimony supported and corroborated in every essential detail the testimony of the motorman and the two officers.

From this testimony there was but one conclusion to be arrived at, and that is that plaintiff was not a passenger upon the car of defendants at the time immediately preceding his being run over by the car. The testimony was overwhelmingly in complete denial of plaintiff's evidence that he was a passenger upon the car. The testimony of defendants in contradiction of that of plaintiff as to his being a passenger was by un-

impeached, disinterested witnesses who had no connection whatever with the defendants, and whose testimony there is not any cause for disbelieving. It may be said that the motorman was an interested witness. Be that as it may, without his testimony plaintiff's evidence regarding the occurrence is not only completely overcome, but discredited.

Therefrom the jury could honestly and intelligently come to but one conclusion, which was, that plaintiff was not a passenger upon the car of defendants at the time immediately preceding the moment of his losing his leg. After an examination of all the testimony, pro and con, we agree with the conclusion to which the jury arrived. Plaintiff not being a passenger, as averred in his declaration, upon the car of defendants immediately preceding the accident, did not maintain any of the material averments of his declaration, and consequently was not entitled to a verdict in his favor.

The cross-examination of plaintiff by defendants' counsel regarding his having policies of accident insurance was not for the purpose of showing that he had received compensation for his injuries, but for the purpose of discrediting his testimony. Defendants proved that plaintiff had made a statement regarding the accident in the making of proof of claim in the accident insurance policies. This statement was offered in evidence and read to the jury, and is as follows:

"April 21st, 1924.

"I, Eugene Louis Cribb state and declare I was on an eastbound 75th St. street car on April 15, 1924, at about 11 P. M. having boarded the street car at 75th St. and Cottage Grove Ave., intending to go to Illinois Central Railroad Station and take a train to the City. That after boarding 75th St. car I changed my mind and decided to return via the 75th St. and Cottage Grove to 63rd St. and then take the Elevated Railroad to Sheridan Road Station and return to my home.

"That as the street car arrived at 75th St. and Ellis Ave. I got off the front end of street car and in some manner stumbled, where as in trying to regain my balance I threw both hands against the side of the car to protect myself and regain my balance and in so doing I was thrown on my back and both of my legs went under the car, quickly jerking my left leg out, my right leg was caught by the rear end of car and cut off at the ankle.

"I, Eugene Louis Cribb state and declare the above to be the facts as to the best of my memory and belief of the accident.

Eugene Louis Cribb.

Witness C. J. Smith.
Witness E. McFarland, R. N.''

Such statement was properly admissible on cross-examination as directly affecting his credibility.

Plaintiff was asked this question on cross-examination:

"Q. Well now, under your policy with the Continental Casualty Company and under your policy with the Employers' Liability Company, if you could show them, and prove to them that you were hurt getting off the street car on which you were riding as a passenger, you were entitled to twice the amount that you would be entitled to if you were on the street and not riding on a street car?''
to which plaintiff answered that there was no double indemnity on the Continental policy or on the Employers' policy. He was then shown Policy No. 143454 of Employers' Liability Insurance Company, dated March 15, 1924, for $6,000, and admitted that section D thereof did provide that if the insured shall sustain injuries while boarding or alighting from a street railway car, the insurance company will pay double indemnity.'' Plaintiff on further interrogation admitted that the policy provided that the loss of his "foot" above

the ankle would entitle him to double indemnity, if the result of an accident on a street car; that his broker presented his claim to the Employers' Liability Insurance Company for double indemnity, but that he settled for single indemnity. He was then shown the Continental Casualty Company policy and admitted that it contained a provision that the insurance company would pay double indemnity for an injury which occurred while riding as a passenger in a passenger conveyance, and he stated that he settled for single indemnity and had made no claim for double indemnity. This testimony was received without objection by plaintiff's counsel.

This evidence was not admitted for the purpose of showing that plaintiff had received any indemnity for his injuries by the loss of his leg, but to test his credibility, and could not be received for any other purpose, because it is immaterial, so far as defendants were concerned, as to what compensation he may have procured for his injuries from any source other than that of defendants. We do not think the jury could have understood that the evidence was extracted for the purpose of showing that plaintiff had been compensated from other sources for the loss of his leg. There is no complaint that the jury were not properly instructed as to the law upon the questions of fact submitted to them for their decision.

It is well settled that a witness may be impeached by showing that before the trial he made statements regarding facts inconsistent with testimony given on the trial as to the same facts. *Probasco v. Crane Co.,* 238 Ill. App. 287. In *Illinois Cent. R. Co. v. Wade,* 206 Ill. 523, it was held that statements of a witness made out of court, oral or in writing, if contradictory of a material point in his testimony in court, may be introduced in evidence after sufficient foundation is laid, as tending to discredit the witness.

Even were testimony elicited from plaintiff regarding his accident insurance not material, and were disregarded by this court, still plaintiff utterly failed to maintain his cause of action, as set forth in his declaration, that he was a passenger upon the car of the defendants. This being so, under no circumstances were defendants liable to plaintiff for the loss of his leg.

A consideration of the cross-errors assigned by defendants not materially affecting their defense, we pass over without comment.

There being no error of a reversible character in the record in this case, the judgment of the superior court is affirmed.

*Affirmed.*

WILSON and RYNER, JJ., concur.